## Strickhouser Estate

*Arthur F. McNulty*, for the Department of Revenue.

*Jeffrey C. Bortner*, for accountants.

MILLER, *J.*, September 21, 1989 — This matter comes before the court on the appeal by the executors of this estate from a Pennsylvania inheritance tax assessment. We dismiss the appeal.

Harris E. Strickhouser died on February 18,

1988, a resident of New Salem Borough in York County, Pennsylvania. He left a last will and testament dated February 5, 1988.

Item I of the last will and testament of the decedent reads as follows:

"I direct that all my just debts, expenses of my last illness and funeral, expenses of the administration of my estate, and estate and inheritance taxes be paid out of the first available funds."

Item II of said last will and testament provides, in part, as follows:

"I order and direct my executors to convert my entire estate into cash at either public or private sales as soon as practical following my death, which cash, after the payment of debts, expenses and taxes provided for in Item I above, I give and bequeath as follows: . . . "

The decedent then made four specific bequests of cash in the total amount of $6,000 to charitable organizations, and then made four specific bequests of cash in the total amount of $45,000 to named individual beneficiaries. He left the balance of such cash in trust for the benefit of named charitable beneficiaries.

On January 24, 1989, the named executors filed an inheritance tax return showing total assets in the estate in the amount of $244,539.97 and total deductions of $48,749.02. The executors subtracted the deductions from the taxable specific bequests, and reported that no inheritance tax was due.

On April 10, 1989, the Pennsylvania Department of Revenue issued its notice of inheritance tax appraisement, and assessment of tax. The notice accepted the estate's valuation of gross assets and total deductions, and subtracted the deductions from the assets. This produced a net value of the estate in the amount of $195,745.92. The Depart-

ment of Revenue then deducted from this amount the charitable bequests in the amount of $150,745.92, and determined the net value of the estate subject to tax to be $45,000. Since the applicable tax rate was 15 percent, inheritance tax in the amount of $6,750 was assessed by the department. This appeal followed.

The issue before the court is whether the Department of Revenue's method of assessing inheritance tax upon the estate by deducting the debts and expenses from the gross estate rather than apportioning them among the several gifts is proper. The executors contend that the deductions must be subtracted in toto from taxable bequests or in the alternative that they must be proportioned between the taxable and non-taxable bequests. If the deductions were applied only to the taxable bequests, there would be no inheritance tax due, because the amount of the deductions exceeds the amount of the taxable specific bequests.

Section 1716(b)(1) of Title 72, Pennsylvania Consolidated Statues, (Inheritance and Estate Tax Act) provides inter alia:

"When the decedent was a resident, the tax shall be computed upon the value of the property, in excess of the deductions specified in Subchapter F (relating to deductions), at the rates in effect at the transferor's death." Under this provision, an estate must compute its gross assets and subtract its total deductions and expenses to arrive at a net value subject to tax. The tax rate is then applied to this value. The statute contains no provision to compute the tax liability in any other manner.

The seminal case in this field is *Camp's Estate,* 298 Pa. 405, 148 Atl. 496 (1930). In that case, the court reversed a determination of the Orphans' Court of Allegheny County that the estate's debts

and expenses could be prorated against specific bequests. The court specifically held that the debts and expenses must be deducted from the gross estate in determining the inheritance tax liability. The court stated:

"[Deductions] are simply to be deducted from the gross estate and the value of any life estate or remainder is to be determined after that has been done. There is no prorating to be done in fixing the tax nor is there any allocating or crediting."

While the issue in *Camp* involved the proration of deductions among different types of taxable bequests, we are satisfied that the principle set forth by the *Camp* court applies in all cases.

While the decision in *Camp* was rendered under a forerunner to the current act, the language in the current act is identical except for stylistic changes. In fact, the official comments to section 401 of the 1961 act provide, in pertinent part:

"This section is not intended to abrogate the rule of *Camp's Estate*, 298 Pa. 405 and its language is not to be taken as authorizing the apportionment of deductions."

The rule of *Camp's Estate*, and the intent of the legislature to have it apply to subsequent redrafts of the inheritance tax law has been followed by other courts, and has been affirmed by the Pennsylvania Supreme Court.

In *Remmel Estate*, 425 Pa. 325, 228 A.2d 889 (1967), the issue was substantially similar to that raised in this estate. There, as here, the major part of the estate was left to charitable organizations. There, as here, the commonwealth's computation subtracted allowable deductions from the decedent's total assets, resulting in the assessment of an inheritance tax greater than would have been assessed upon the estate had the deductions been

applied only to the taxable bequests. There, as here, the admitted result was that fewer dollars ultimately were received by the charities. In *Remmel,* the decedent provided that the taxes be paid out of the residuary estate and thereby reduced the residue by the amount of taxes before her gift to charity. In this case, the decedent specifically directed that the estate and inheritance taxes be paid out of the cash derived from the conversion of her estate before the payment of the bequests, charitable or otherwise. This does not constitute a tax on charities, because it was the decedent himself who directed the manner of the payment of the taxes. It is only the balance remaining in the residuary estate that the decedent gave to the charities, and there is no tax upon that gift. Accordingly, we view the charitable gift as a non-taxable transfer made from the net distributive estate rather than property which is excluded from the estate itself. *Remmel Estate,* at 330, 228 A.2d at 893. See also *Estate of Marjorie Saylor,* no. 1983-306 (O.C., Northampton 1985). We are satisfied that there can be no distinction between taxable and non-taxable remainders in the calculation of the net estate for tax purposes, especially where the terms of the will provide for the payment of the inheritance tax before the division of the estate among the specific and residuary legatees. Accordingly, we enter the following

## ORDER

And now, September 21, 1989, the appeal of the executors is dismissed. The assessment of inheritance tax by the Pennsylvania Department of Revenue is sustained in the amount of $6,750 plus interest from December 18, 1988.